02-10-131-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00131-CV

 

 


 
 
 Roger K. Parsons
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Robert M. Greenberg; Legal Services P.C., Robert M.
 Greenberg, Attorney; Robert E. Motsenbocker; Shafer, Davis, O’Leary &
 Stoker, Inc. f/k/a Shafer, Davis, McCollum, Ashley, O’Leary & Stoker,
 Inc.; E.I. Du Pont de nemours and company; and ConocoPhillips f/k/a Conoco,
 Inc.
 
 
  
 
 
 APPELLEES
 
 


 

----------

 

FROM THE 17th
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          This
appeal arises from a legal malpractice suit by Appellant Roger K. Parsons
against Appellees Robert M. Greenberg; Legal Services P.C.; Robert M.
Greenberg, Attorney (collectively, Greenberg); Robert E. Motsenbocker; Shafer,
Davis, O’Leary & Stoker, Inc. f/k/a Shafer, Davis, McCollum, Ashley,
O’Leary & Stoker, Inc. (collectively, Motsenbocker); E.I. du Pont de
Nemours and Company (DuPont); and ConocoPhillips f/k/a Conoco, Inc. (Conoco). 
We will affirm the trial court’s judgment.

Background
Facts

In
November 1991, Parsons retained Windle Turley and Windle Turley, P.C.
(collectively, Turley) to represent him in wrongful death and survival actions
in connection with the death of his wife (the DuPont litigation).  A jury
returned a verdict for Parsons, awarding him $4.75 million in damages and also
awarding punitive damages.  The trial court granted judgment notwithstanding
the verdict on the punitive damages but signed a $4.75 million judgment for
Parsons.

In
July 1996, Parsons retained Robert Greenberg to sue Turley for legal
malpractice (the Turley litigation) relating to Turley’s representation of him
in the DuPont litigation.  Later, Parsons also hired Motsenbocker at
Greenberg’s suggestion.  Turley moved for summary judgment on limitations
grounds because Turley was not served with citation prior to the expiration of
the statute of limitations.  The trial court granted summary judgment for
Turley, and the Dallas Court of Appeals affirmed the summary judgment.  See
Parsons v. Turley, 109 S.W.3d 804, 808–10 (Tex. App.—Dallas 2003, pet.
denied).

While
Parsons appealed the summary judgment, he retained a new attorney, Kevin
Queenan, and filed the instant suit against Greenberg and Motsenbocker for their
representation in the Turley litigation.  Parsons alleged claims of misrepresentation
and fraud, breach of fiduciary duty, negligence, gross negligence, and
violations of the Deceptive Trade Practices Act against the attorneys.  Greenberg
and Motsenbocker filed motions for summary judgment on all but the legal
malpractice claims.  The trial court granted the motions.

Queenan
later withdrew as Parsons’s counsel, and Parsons continued pro se, adding
Conoco and DuPont as defendants in his third amended petition.  Parsons alleged
claims for unjust enrichment and conspiracy to defraud against Conoco and
DuPont, sought the imposition of a constructive trust against them, and sought a
declaration that Conoco and DuPont were vicariously liable for the fraudulent
acts of Greenberg and Motsenbocker.

Conoco
and DuPont specially excepted to Parsons’s fourth amended petition, and the
trial court ordered Parsons to replead his claims against Conoco and DuPont.  After
Parsons filed his fifth amended petition, Conoco and DuPont specially excepted
again and moved to dismiss.  The trial court granted Conoco and DuPont’s special
exceptions and dismissed the claims against them.

Parsons
proceeded to trial on the claims of legal malpractice against Greenberg and
Motsenbocker.  The jury found that Greenberg had been negligent in handling the
Turley litigation, that Motsenbocker had not been negligent, and it awarded
Parsons $0 in damages.  Parsons appealed.

Discussion

I.     The
claims against Greenberg and Motsenbocker

          A. Sufficiency
of the evidence

          In
his first issue, Parsons argues that two of the jury’s findings are against the
great weight and preponderance of the evidence.  When reviewing an assertion
that the evidence is factually insufficient to support a finding, we set aside
the finding only if, after considering and weighing all of the evidence in the
record pertinent to that finding, we determine that the credible evidence
supporting the finding is so weak, or so contrary to the overwhelming weight of
all the evidence, that the answer should be set aside and a new trial ordered. 
Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh’g); Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965).  When the party with the burden of proof appeals
from a failure to find, the party must show that the failure to find is against
the great weight and preponderance of the credible evidence.  Dow Chem. Co.
v. Francis, 46 S.W.3d 237, 242 (Tex. 2001); Cropper v. Caterpillar
Tractor Co., 754 S.W.2d 646, 651 (Tex. 1988).

              1.  The
jury’s finding that Motsenbocker was not negligent

          In
the first subpart of his first issue, Parsons claims that Motsenbocker was
negligent under three theories and that the jury’s finding that he was not
negligent was against the great weight and preponderance of the evidence.[2]

                   a.  Lost
punitives and statute of limitations deadlines

          Parsons
argues that Motsenbocker was negligent in pursuing damages against Turley when he
either knew or should have known that they were not available and that
Motsenbocker was negligent in not arguing that the limitations period should
have been calculated from a later date, thus making service of citation on
Turley timely.

In
his brief, Parsons does not direct us to, nor have we found, any evidence
presented at trial that Motsenbocker knew or should have known that lost
punitives were not available in a legal malpractice case, or that he pursued
them despite this knowledge.  An appellate court is not required to search the
appellate record, with no guidance from the briefing party, to determine if the
record supports the party’s argument.[3]  Hall v. Stephenson,
919 S.W.2d 454, 466–67 (Tex. App.—Fort Worth 1996, writ denied).  The only
evidence that Parsons does point to pertains to Motsenbocker’s general
responsibility to research Parsons’s claims.  This is not evidence that lost
punitives were not available, that Motsenbocker pursued them regardless of
their unavailability, or that he was negligent in pursuing them.

          Likewise,
Parsons does not direct us to, nor have we found, any evidence presented at
trial that Motsenbocker should have argued in the Turley litigation that the
limitations period should have been calculated from a later date.  Parsons
cites only to a bench conference in the reporter’s record that makes no mention
of the statute of limitations or any deadlines, and to two briefs written by
Motsenbocker and Greenberg that do not address a second accrual date.  This is
not evidence that there was another way to calculate the limitations period or
that Motsenbocker was negligent in failing to argue for it.  Parsons’s own
testimony at trial referred to the 1996 date as the correct start of the
limitations period for his claims against Turley.  He testified,

And what Ms. Reggio
says in her memorandum—and I’ll show you hopefully after lunch here—is that
there is a two-year statute of limitations on legal malpractice claims that
begin to run—it is—the starting time is the date that mandate issued in the—in
the appeal of Parsons v. DuPont.  So that was back in 1996, July the 18th,
1996.

 

So
two years from that date—or between that time, between 19—July the 18th, 1996,
and July the 18th, 1998, is when you have to file a lawsuit; otherwise, your
case will be thrown out for reasons of not timely perfecting your claims
against—against the party, in this case Mr. Turley and his law firm.

Parsons
later mentions that an opinion in the Turley litigation from the Fifth Circuit
Court of Appeals noted that there was a second, later appeal in the underlying
DuPont litigation that possibly could have tolled the limitations period, but there
was no evidence presented that Motsenbocker should have argued for it or that
he was negligent in failing to do so.  Thus, the jury’s finding that
Motsenbocker was not negligent under these theories is not against the great
weight and preponderance of the evidence.

                  b.  Failure
to serve citation

          Parsons
argues that, as his attorney, Motsenbocker was negligent in failing to serve
Turley with citation.  The parties do not dispute that Parsons and Motsenbocker
had an attorney-client relationship; they disagree as to the duties that that
relationship imposed upon Motsenbocker.  A
plaintiff in a legal
malpractice suit must prove that (1) the attorney owed the plaintiff a duty,
(2) the attorney breached that duty, (3) the breach proximately caused the
plaintiff’s injuries, and (4) damages occurred.  Peeler v. Hughes & Luce,
909 S.W.2d 494, 496 (Tex. 1995); Stancu v. Stalcup, 127 S.W.3d 429, 432
(Tex. App.—Dallas 2004, no pet.).  Parsons argues that Motsenbocker did not
present evidence affirmatively showing that he had declined the duty of
overseeing timely service of citation.  We are mindful that it was first Parsons’s
burden to present evidence that Motsenbocker owed Parsons that duty.  See Peeler,
909 S.W.2d at 496.

Parsons’s
expert Michael Quinn testified at trial that Motsenbocker did not use due
diligence in having citation issued and service achieved on Turley.  Then when asked
whether he knew if Greenberg was the one who made the decision to delay
service, Quinn testified that he did not know but that it would not surprise
him.  Motsenbocker’s expert Roland Johnson testified that Motsenbocker was not
negligent in “the role that he had at the time of filing of the lawsuit.” 
Johnson explained, “When multiple people work on things, people have different
roles.”  At the time of filing the original petition, Johnson believed that
Motsenbocker’s role did not include making sure that citation was served.

Parsons
argues that Johnson’s testimony was not evidence because it conflicts with the
undisputed facts.  But contrary to Parsons’s assertion, the evidence at trial
was not that Greenberg was “completely dependent on Motsenbocker when it c[a]me[]
to pre-trial procedure.”  Greenberg testified that he was “not . . . very
good” at legal writing and research and so solicited the help of others in
drafting petitions and other motions practice.  But neither Greenberg nor any
other witness ever testified that Greenberg and Motsenbocker had agreed that
Motsenbocker alone would be responsible for all pre-trial procedures.[4] 
In fact, when asked whether Parsons had any knowledge that Motsenbocker had
made an agreement to withhold service of citation to Turley, Parsons responded,
“No.  I have no evidence of that, no.”

The undisputed
evidence is that Greenberg filed the petition and delayed service of citation,
a practice he had done “lot[s] of times.”  Motsenbocker was never tasked with
issuing or serving the citation, and his name was not on the petition.  Parsons
did not plead or argue any sort of vicarious liability that Motsenbocker might
have had for Greenberg’s actions.  See Tex. Disciplinary Rules Prof’l
Conduct R. 5.01 cmt. 1, reprinted in Tex. Gov’t Code Ann., tit. 2,
subtit. G, app. A, art. 10 § 9 (West Supp. 2011) (noting the “general principle
that a lawyer is not vicariously subjected to discipline for the misconduct of
another person”); see also Tex. Disciplinary Rules Prof’l Conduct R.
7.01 cmt. 1 (noting that the prohibition against naming a law firm “in any
manner suggesting such an ongoing professional relationship” because it would “create
the false impression that the lawyers named have assumed a joint professional
responsibility for clients’ legal affairs”).  He presented no evidence that
when two or more lawyers take on representation of a client, each lawyer is
responsible for overseeing the other’s work.  See Dear v. Scottsdale Ins. Co.,
947 S.W.2d 908, 918 (Tex. App.—Dallas 1997, writ denied) (noting that one of
the law firms representing the plaintiff did not participate in or control the
prosecution of his counterclaims when another law firm was hired to prosecute
those claims and maintained exclusive control over them).  As Motsenbocker explained,

If
you enter—if you’re asked to become co-counsel in a case that’s already under
progress, by two other very fine lawyers, and they ask you to do a specific
task, that does not impose, in my opinion, a duty on me to go look at all of
the work those lawyers have done for two years to find out if they might have
made a mistake.  I did what I was asked to do and I did it with reasonable
prudence and [Parsons was] satisfied with the results of my work.

Both
sides presented expert witnesses to support their positions, and the jury was
free to give each expert’s testimony the weight it felt was appropriate.  See
Sears, Roebuck & Co. v. Black, 708 S.W.2d 925, 927 (Tex. App.—Eastland
1986, no writ) (noting that the jury was free to believe one expert’s testimony
and to reject that of another when both sides presented expert witnesses).  Johnson
testified that he had reviewed documents and “satisfied [himself] about the
particular activity of Mr. Motsenbocker, as it related to the filing and the service
issues in this lawsuit that we’re here today about.”  Parsons’s expert Quinn
testified that he had not reviewed documents or testimony that described
Motsenbocker’s role in the Turley litigation other than the testimony presented
at trial before he took the stand.  Quinn stated he only heard portions of
Parsons’s testimony.  He acknowledged that other than the trial testimony that
he heard, he had no basis for rendering an opinion as to Motsenbocker’s alleged
negligence.  The jury was free to believe Johnson’s testimony and disbelieve
Quinn’s.  Its determination that Motsenbocker was not negligent in his duties
to Parsons is not against the great weight and preponderance of the evidence.

              2.  The jury’s finding of $0
damages

 

In
the second subpart of his first issue, Parsons claims that the jury’s finding
that he suffered zero damages was against the great weight and preponderance of
the evidence.  “[A] malpractice plaintiff may recover damages for attorney’s
fees paid in the underlying case to the extent the fees were proximately caused
by the defendant attorney’s negligence.”  Akin, Gump, Strauss, Hauer &
Feld, L.L.P. v. Nat’l Dev. & Research Corp., 299 S.W.3d 106, 122 (Tex.
2009).  Parsons was therefore required to prove what amount he paid to
Greenberg and Motsenbocker that he would not have had to pay but for Greenberg’s
negligence.  “Causation must be proved, and conjecture, guess, or speculation
will not suffice as that proof.”  Id.

Parsons’s
evidence at trial on damages consisted of bills from various entities and
checks that he wrote throughout the course of the Turley litigation.  Parsons
did not present evidence as to which bills were proximately caused by
Greenberg’s negligence, or conversely, what bills he would have had to pay
regardless of any negligence.  See id. (citing Thomas D. Morgan, Lawyer
Law: Comparing the ABA Model Rules and the ALI Restatement (Third) of the Law
Governing Lawyers 98 (2005) (distinguishing malpractice from fee forfeiture
and noting that the “key distinction” is that a fee forfeited “need have no
relation to actual damages suffered by the client”)).  He argues that even if
the evidence were unclear as to precisely how much damage Parsons actually
suffered, the jury “could have arrived at a number of plausible damages awards”
and thus, the award of zero damages is illogical.  But even if the jury could
have sifted through eight years of bills and determined which tasks were
related to defending against the summary judgment motion on failure to
diligently serve citation, Parsons would still fail to meet his burden under Akin,
Gump.

In Akin,
Gump, the plaintiff NDR sued its attorneys for failing to request certain
jury instructions in the underlying trial against Panda.  299 S.W.3d at 111. 
The supreme court held that NDR could not recoup any of the attorneys’ fees it
paid to Akin Gump in appealing its loss at trial because it did not present
evidence that it would not have otherwise had to pay some appellate
fees.  Id. at 123.  It said,

There
is no evidence that if NDR had recovered a favorable judgment in the Panda
suit, it would not have paid appellate fees to defend the judgment.  The
evidence does not show that if NDR had obtained a favorable judgment, Panda
would not have appealed the case or that NDR would not have defended its
judgment on appeal if Panda appealed.

Id. 
Under the reasoning of Akin, Gump, Parsons could only have met his
burden by presenting evidence that if Greenberg had diligently served Turley
and the case had proceeded, there would have been no other appeal in the case for
which Parsons would have paid attorneys’ fees.  It is not enough to show that
Parsons would not have had to pay attorneys’ fees for the appeal of the summary
judgment based on lack of diligence in serving citation.  And while we agree
with Parsons that it is a difficult burden to bear, it is nonetheless the
burden that Parsons had to meet and he did not meet it.

Because
there was no evidence of the amount of damages proximately caused by
Greenberg’s negligence, the jury’s award of $0 damages is not against the great
weight and preponderance of the evidence.  We overrule Parson’s first issue.[5]

          B. Procedural
errors

          In
his second issue, Parsons argues that the trial court committed three procedural
errors that prejudiced the jury against Parsons.

                   1.  The
trial court did not err by allowing evidence of Parsons’s conspiracy theories
to be admitted.

 

          The
morning of voir dire, Parsons filed a supplemental motion in limine, which is
not in the record, seeking to exclude all references to any conspiracy theories
Parsons might have had.  The defendants objected that the motion was untimely,
and the trial court declined to hear it.

Five
hours later, during voir dire, Lisa Blue[6] asked the jurors,

Roger
Parsons with an S, has anyone ever Googled Mr. Roger Parsons?  Anybody ever
Googled him?  Is there anybody on the jury, just raise your hand quickly, now,
this is confusing, George Bush, the father, . . . how many
of you think George Bush, the father, did a good job, raise your hand?

Parsons
objected, saying, “I would like to object, Your Honor.  May we approach and discuss
this?”  A bench conference was held off the record after which Blue returned to
voir dire.

          Parsons
argues that Blue’s line of questioning during voir dire was prejudicial.  Normally,
to preserve a complaint for appellate review, a party must have presented to the
trial court a timely request, objection, or motion that states the specific
grounds for the desired ruling, if they are not apparent from the context of
the request, objection, or motion.  Tex. R. App. P. 33.1(a); see also
Tex. R. Evid. 103(a)(1).  If a party fails to do this, error is not preserved,
and the complaint is waived.  Bushell v. Dean, 803 S.W.2d 711, 712 (Tex.
1991) (op. on reh’g).  Parsons argues that he preserved his complaint because
the grounds for his objection were apparent from the context.  See Tex.
R. Evid. 103(a)(1).  However, it is not clear from the record what Parsons’s
objection was, whether he argued that the question was prejudicial, or whether
he objected on some other grounds.  The questions to which Parsons objected did
not include any references to conspiracy theories, and later when Blue did
mention Parsons’s belief in a conspiracy, Parsons did not object.  The same
information also came in at trial when Motsenbocker questioned Parsons
regarding conspiracy theories and George H.W. Bush.  Parsons objected but
stated no basis for his objection, and it was overruled.

Parsons
argues that he did not have to renew his objections under rule 103(a)(1) of the
rules of evidence.  See Tex. R. Evid. 103(a)(1).  Rule 103(a)(1) states,
in part, “When the court hears objections to offered evidence out of the
presence of the jury and rules that such evidence be admitted, such objections
shall be deemed to apply to such evidence when it is admitted before the jury
without the necessity of repeating those objections.”  Id.  However, as
stated above, there is no ruling on the record.  Therefore, Parsons has not
preserved this complaint for our review.

2.  The trial court
did not err in its instructions to Parsons regarding admission of evidence.

 

          Parsons
argues that the trial court “[a]ctively obscure[red]” evidentiary issues,
“played ‘hide the ball,’” and allowed opposing counsel to “bully” Parsons by
not providing Parsons with more guidance in his attempts to admit evidence. 
Numerous times during trial, opposing counsel objected to Parsons’s offers of evidence
on the grounds that the evidence lacked foundation.  In most instances, the
trial court asked Parsons if he would like to continue in attempting to
establish a foundation for admission.  The trial court admitted some of
Parsons’s evidence over objections but excluded other evidence.

          Parsons’s
argument on appeal contains no authority supporting his contention that the
trial court’s instructions and rulings were improper; thus, it is inadequately
briefed.  See Tex. R. App. P. 38.1(i) (requiring an appellant’s brief to
contain clear and concise arguments “with appropriate citations to authorities”);
see also Fredonia State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279,
284–85 (Tex. 1994) (discussing the “long-standing rule” that a point may be
waived due to inadequate briefing).  We also note that it is not the court’s
responsibility to school a pro se litigant in legal terminology and procedure.[7]
 See, e.g., Rymer v. Lewis, 206 S.W.3d 732, 736 (Tex. App.—Dallas
2006, no pet.) (noting that public policy demands that a trial judge act with
absolute impartiality and not act as an advocate for any party).  Parsons
elected to represent himself, and he was bound to the same standards as
licensed attorneys.  See Cheng v. Wang, 315 S.W.3d 668, 672 (Tex. App.—Dallas
2010, no pet.) (noting that pro se litigant’s difficulties with the
technicalities of a trial do not constitute grounds for reversal) (citing Mansfield
State Bank v. Cohn, 573 S.W.2d 181, 184–85 (Tex. 1978) (“There cannot be
two sets of procedural rules, one for litigants with counsel and the other for
litigants representing themselves.”)).

3.  The trial court
did not err by submitting the question on damages to the jury.

 

          Parsons
argues that the jury charge regarding damages was worded such that it “proximately
caused” the jury to award zero damages.  Parsons did not object to the question
before the charge was read to the jury, as required by the rules of civil
procedure.  See Tex. R. Civ. P. 272.  During the charge conference, the
only reference Parsons made to Question 3 was

Regarding
Question 3, I’ve—I would like to have an additional Question 4 that similarly
worded, but instead of regarding the damages—I mean, the amounts paid by Roger
Parsons would be the amounts lost by Roger Parsons by the loss of the legal
action that the defendants were hired to handle named Parsons v. Turley. 
Those are my objections, Your Honor.

Parsons’s
statement does not appear to be an objection to Question 3 at all, much less
the same objection that he now attempts to make on appeal.  See Banda v.
Garcia, 955 S.W.2d 270, 272 (Tex. 1997) (noting that the complaint on
appeal must be the same as that presented in the trial court).  Parsons argues
that he objected to Question 3 in his motion for new trial.  This is not
sufficient to preserve error without an objection during the charge
conference.  See Kirkpatrick v. Mem’l Hosp. of Garland, 862 S.W.2d 762,
769 (Tex. App.—Dallas 1993, writ denied) (“Objections to the charge in a motion
for a new trial are untimely and preserve nothing for review.”).  Because
Parsons did not timely object, he has waived his objection.  See Tex. R.
Civ. P. 272; Tex. R. App. P. 33.1.  We overrule Parsons’s second issue.

C. The
August 11, 2008 order

          In
his third issue, Parsons argues that the trial court issued an order sua sponte
that incorrectly limited Parsons’s recovery to a regurgitation of fees paid to
Greenberg and Motsenbocker.

          We
first note that the August 11, 2008 order was not sua sponte but an order on the
defendants’ motion to exclude expert testimony.  In May 2008, Motsenbocker
filed a motion (joined by Greenberg) for partial summary judgment on Parsons’s
claim for lost punitive damages (that is, the punitive damages Parsons alleged
he would have recovered from Turley but for Greenberg and Motsenbocker’s
negligence).  Motsenbocker argued that lost punitive damages in a legal
malpractice action were barred as a matter of law.  The trial court granted
Motsenbocker’s motion, and because Parsons would not be allowed to seek lost
punitives at trial, Motsenbocker (joined by Greenberg) then moved to exclude
Parsons’s proposed expert testimony on matters pertaining to lost punitives.  The
August 11, 2008 order granted Motsenbocker’s motion stating,

          On July 11,
2008, the Court heard [Motsenbocker’s] “Motion to Exclude Testimony of Plaintiff’s
Designated Experts” . . . .  [T]he Court hereby finds and
orders as follows:

 

          By Order
entered June 6, 2008, the Court has previously granted [Motsenbocker’s] Motion
for Partial Summary Judgment and has ordered that Plaintiff take nothing on his
claims for lost punitive damages.  Based upon that ruling, the Court finds that
the only alleged damages the Plaintiff is entitled to recover in this case are
the attorneys[’] fees and expenses that he paid to the Defendants and all other
expenses Plaintiff paid to others, including, but not limited to, expert
witness fees and investigator fees and expenses in pursuing his claims against
Windle Turley.  Based upon the Court’s rulings, insofar as the proffered
testimony of Plaintiff’s proposed experts are not relevant to Plaintiff’s
claims against these Defendants, such testimony should be excluded at the trial
of the case.

 

          IT IS
THEREFORE ORDERED, ADJUDGED AND DECREED that the testimony of [Parsons’s
proposed experts on lost punitive damages], all as set forth in their reports
offered into evidence in this hearing, be excluded from the trial of this case
in their entirety.

 

          IT IS
FURTHER ORDERED, ADJUDGED AND DECREED that any testimony of Michael Quinn
relating to his opinion as to any breaches of duty of Windle Turley
constituting negligence, gross negligence, breaches of fiduciary duties, or
other matters related to the DuPont or Conoco litigation, and the amount of
compensatory damages or punitive damages that could have been awarded in the
DuPont and/or Conoco litigation is hereby excluded in the trial of this case.

          Parsons
argues on appeal that the August 11, 2008 order was overbroad and incorrectly limited
his recovery to the fees he paid the attorneys because he had other live causes
of action at the time of the order, including a claim for gross negligence, for
which other damages are recoverable.  Parsons received a copy of the proposed
order at the hearing and asked for “a couple of days to respond” to the
proposed wording.  There is nothing in the record showing that, in the month
between the hearing and the date the trial judge signed the order, Parsons ever
objected to the language as overbroad, nor is there any evidence that Parsons
made an objection to the trial court after the order was signed.  Because
Parsons never made an objection to the trial court, he has waived the issue on
appeal.[8]  See Tex. R. App.
P. 33.1(a); Bushell, 803 S.W.2d at 712.

          Even
if he had preserved the error, two partial summary judgments ordered that
Parsons take nothing on his other, non-negligence claims prior to trial.  Because
we will uphold those summary judgments, Parsons has suffered no harm by the limiting
of his recovery in the August 11, 2008 order.  See Tex. R. App. P.
44.1(a) (noting that the appellate court may not reverse a judgment unless the
error caused harm to the appellant); Romero v. KPH Consolidation,
Inc., 166 S.W.3d 212, 225 (Tex. 2005).  Parsons’s argument that the August
11, 2008 order erroneously prevented the trial judge from considering evidence
on damages related to Parsons’s gross negligence and fraud claims when she
ruled on the defendant’s motion for summary judgment was also never presented
to the trial court and thus was waived.  See Bushell, 803 S.W.2d at
712.  Further, none of the parties argued in their motions for summary judgment
that Parsons’s claims should be dismissed because Parsons could not present
evidence of damages beyond the fees he paid.  Thus, it could not have been the
ground on which summary judgment was granted.  See State Farm Lloyds
v. Page, 315 S.W.3d 525, 532 (Tex. 2010) (noting that a court cannot grant
summary judgment on grounds not presented in the motion); Timpte Indus.,
Inc. v. Gish, 286 S.W.3d 306, 310 (Tex. 2009).  In fact, in the hearing on
the attorneys’ motions for summary judgment, Parsons stated,

We
don’t have a ruling that this is a legal malpractice case. We’ve had a ruling
that the Motsenbocker defendants and Greenberg defendants have joined in [a] motion
for summary judgment as to damages as to what—whether I can collect punitive
damages in this case, lost punitive damages.  And all the Court said is, [“]No,
you can’t.[”]

In
his reply brief on appeal, Parsons also appears to make a due process argument. 
Parsons did not make this argument to the trial court (or in his opening brief
on appeal).  As a rule, a claim, including a constitutional claim, must have
been asserted in the trial court in order to be raised on appeal.  Dreyer v.
Greene, 871 S.W.2d 697, 698 (Tex. 1993) (citing Wood v. Wood, 159
Tex. 350, 320 S.W.2d 807, 813 (1959)).  Parsons’s constitutional argument is
not properly before us and we will not address it.  See id. (refusing to
address constitutional arguments not asserted in the trial court).  We overrule
Parsons’s third issue.

          D. Partial
summary judgments

          In
Parsons’s fourth through seventh issues, he complains of partial summary
judgments dismissing his claims against Greenberg and Motsenbocker for fraud,
unjust enrichment, breach of fiduciary duty, and gross negligence.  We review a
summary judgment de novo.  Travelers Ins. Co. v. Joachim, 315 S.W.3d
860, 862 (Tex. 2010).  We consider the evidence presented in the light most
favorable to the nonmovant, crediting evidence favorable to the nonmovant if
reasonable jurors could, and disregarding evidence contrary to the nonmovant
unless reasonable jurors could not.  Mann Frankfort Stein & Lipp
Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  We indulge
every reasonable inference and resolve any doubts in the nonmovant’s favor.  20801,
Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008).  A defendant who
conclusively negates at least one essential element of a cause of action is entitled
to summary judgment on that claim.  Frost Nat’l Bank v. Fernandez, 315
S.W.3d 494, 508 (Tex. 2010); see Tex. R. Civ. P. 166a(b), (c).  When a
party moves for summary judgment on both no-evidence and traditional grounds,
we will first review the trial court’s judgment under the no-evidence standard. 
Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).  If the
appellant failed to produce more than a scintilla of evidence under that
burden, then there is no need to analyze whether the appellees’ summary
judgment proof satisfied the less stringent rule 166a(c) burden.  Id.

              1.  Fraud

          In
his fourth issue, Parsons argues that the trial court erred by granting summary
judgment for Motsenbocker and Greenberg on Parsons’s claim for fraud.  The only
theory of fraud that Parsons argues on appeal is that the attorneys researched
and prepared a claim against Turley for fraud on the court but never filed it. 
Motsenbocker argues that this specific theory of fraud was not alleged in the
live pleading at the time of the summary judgment.  We cannot determine whether
the theory was or was not pleaded in Parsons’s fourth amended petition because
the petition does not appear in the record before us.  However, we do not need
to supplement the record with the relevant pleading because even if Parsons
pleaded this theory, he failed to produce any evidence that the attorneys
committed fraud by failing to file the fraud-on-the-court claim against Turley.

          To
prevail on his fraud claim, Parsons must prove that:  (1) Greenberg and
Motsenbocker made a material representation that was false; (2) they knew the
representation was false or made it recklessly as a positive assertion without
any knowledge of its truth; (3) they intended to induce Parsons to act upon the
representation; and (4) Parsons actually and justifiably relied upon the
representation and thereby suffered injury.  Ernst & Young, L.L.P. v.
Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001).  To support his
claim, Parsons points to his affidavit, which stated that Greenberg and
Motsenbocker told him that there was enough evidence to support a fraud-on-the-court
claim against Turley and that the attorneys never filed the claim.  This is not
evidence that the attorneys never intended to file the claim or that they told
Parsons they would file the claim with no intention to do so.[9] 
Because Parsons did not produce evidence on every element of his fraud claim,
the trial court did not err by granting summary judgment in favor of Greenberg
and Motsenbocker on the fraud claim.  See Frost Nat’l Bank, 315
S.W.3d at 508.  We overrule Parsons’s fourth issue.

              2.  Unjust
enrichment

On
appeal, Parsons’s argument regarding the dismissal of his claim of unjust enrichment
contains no authority and thus, it is inadequately briefed.  See Tex. R.
App. P. 38.1(i) (requiring an appellant’s brief to contain clear and concise
arguments “with appropriate citations to authorities”); see also Fredonia
State Bank, 881 S.W.2d at 284–85 (discussing the “long-standing rule” that a
point may be waived due to inadequate briefing).  Further, Parsons asserted in
the trial court that he did not sue Greenberg and Motsenbocker for unjust
enrichment.  We overrule Parsons’s fifth issue.

              3.  Breach
of fiduciary duty

          In
his sixth issue, Parsons argues that the trial court erred by granting summary
judgment in favor of the attorneys on his claim for breach of fiduciary duty.

The
elements of a breach of fiduciary duty claim are:  (1) a fiduciary relationship
between the plaintiff and defendant, (2) a breach by the defendant of his
fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or
benefit to the defendant as a result of the defendant’s breach.”

Lindley
v. McKnight, 349 S.W.3d 113, 124 (Tex. App.—Fort Worth
2011, no pet.) (quoting Lundy v. Masson, 260 S.W.3d 482, 501 (Tex. App.—Houston
[14th Dist.] 2008, pet. denied)).

Parsons
claims that it was a breach of fiduciary duty for the attorneys (1) to bill
Parsons for work on his fraud-on-the-court claim when they had no intention of
filing it; and (2) to handle the appeals of the dismissal of the Turley
litigation themselves “without telling Parsons that their error was the reason
for the dismissal” and when reversal of the dismissal “was more likely with
another attorney.”  First, as we stated above, there is no evidence that the
attorneys never intended to file the fraud-on-the-court claim.  Second, Parsons
cites to no evidence that supports his contention that the attorneys never told
Parsons the reason for the dismissal or that reversal would be “more likely”
with different appellate counsel.  He argues without support that the attorneys
“insisted” on handling the appeals in the Turley litigation.  This is not
evidence that the attorneys breached any fiduciary duty to Parsons that they may
have had.  We overrule Parsons’s sixth issue.

              4.  Gross
negligence

          In
his seventh issue, Parsons argues that the attorneys committed gross negligence
by pursuing a claim against Turley for lost punitive damages without conducting
the proper research.  The factor that “lifts ordinary negligence into gross
negligence is the mental attitude of the defendant . . . .”
 Burk Royalty Co. v. Walls, 616 S.W.2d 911, 922 (Tex. 1981).  That is,
Parsons was required to demonstrate that Greenberg and Motsenbocker were “consciously,
i.e., knowingly, indifferent to his rights, welfare and safety.”  Id.

As
evidence of Greenberg and Motsenbocker’s failure to properly research the
claim, Parsons points to the fact that the attorneys successfully defended
against a claim for lost punitives when Parsons asserted it against them in the
present case.  That the state of the law in 2008—when the attorneys moved for
partial summary judgment on Parsons’s claim for lost punitive damages—was such
that the attorneys argued that lost punitives were barred as a matter of law
does nothing to demonstrate that the law was so in 1998, when the attorneys
filed the Turley litigation.  Further, as Parsons noted in the trial court,
Texas law had at one point provided for the recovery of punitive damages as
compensatory damages in a legal malpractice case.  See Patterson &
Wallace v. Frazer, 93 S.W. 146, 148 (San Antonio 1906), rev’d on other
grounds, 100 Tex. 103, 94 S.W. 324 (1906).  Parsons also noted in the trial
court that he had found no case explicitly overruling Patterson.  Nor
have we.  Greenberg and Motsenbocker made a policy argument in their defense
with which the trial court agreed.  That is not evidence that Greenberg and
Motsenbocker knew ten years earlier that pursuing lost punitive damages was a
worthless endeavor.  Parsons cites to no other evidence except for a paragraph
from one of his affidavits which was objected to and excluded by the trial
court.  Parsons did not complain of the exclusion on appeal.  Thus, Parsons has
presented no evidence to support his claim of gross negligence.  We overrule
Parsons’s seventh issue.

Because
we hold there is no evidence to support Parsons’s claims of fraud, unjust
enrichment, breach of fiduciary duty, or gross negligence, we do not reach his
argument that the claims were not impermissible fracturing of his legal
malpractice claim.  See Ridgway, 135 S.W.3d at 600 (noting that
there is no need to analyze summary judgment arguments under the traditional
summary judgment burden of proof if the appellant failed to produce more than a
scintilla of evidence under the no-evidence summary judgment burden); see
also Tex. R. App. P. 47.1.

II.    The
motion to disqualify

          Parsons’s
argument on his eighth issue—that it was error for the trial court to refuse to
hear his motion to disqualify a judge after he retired—is comprised of two
sentences, with no cites to supporting authority, other than to rule of civil
procedure 18b and rule of appellate procedure 16, with no explanation of how
these rules apply to the issue here.[10]  An inadequately briefed
issue may be waived on appeal.  Hall, 919 S.W.2d at 467; see also
Fredonia State Bank, 881 S.W.2d at 284–85.  Parsons has waived this issue
on appeal, and we overrule his eighth issue.

III.      The
claims against DuPont and Conoco

          A. Partial
summary judgment

          Parsons
presents his ninth issue as a complaint that the trial court erred by granting
partial summary judgment in favor of Greenberg and Motsenbocker on the issue
that lost punitives are not recoverable against a legal malpractice defendant. 
However, his argument on this issue does not attempt to demonstrate why the
summary judgment was in error, claiming only that because Parsons was not
allowed to seek lost punitives against Greenberg and Motsenbocker, DuPont and Conoco
unjustly benefitted somehow.  Parsons’s argument on appeal is entirely without
citation to authority, is inadequately briefed, and is thus waived.  Fredonia
State Bank, 881 S.W.2d at 284–85.  We overrule Parsons’s ninth issue.

          B. Special
exceptions

          In
Parsons’s tenth issue, he argues that the trial court erroneously granted
Conoco and DuPont’s special exceptions and erred by granting their motion to
dismiss.  Special exceptions may be used to challenge the sufficiency of a
pleading.  Friesenhahn v. Ryan, 960 S.W.2d 656, 658 (Tex. 1998).  A
special exception must point out a particular pleading and “intelligibly and
with particularity the defect, omission, obscurity, duplicity, generality, or
other insufficiency in the allegations in the pleading excepted to.”  Tex. R.
Civ. P. 91.  When the trial court sustains special exceptions, it must give the
pleader an opportunity to amend the pleading.  Friesenhahn, 960 S.W.2d
at 658.  If a party refuses to amend, or the amended pleading fails to state a
cause of action, then summary judgment may be granted.  Id.  We review a
trial court’s decision to sustain special exceptions under an abuse of
discretion standard.  Mowbray v. Avery, 76 S.W.3d 663, 678 (Tex. App.—Corpus
Christi 2002, pet. denied).

          In
his third amended petition, Parsons added claims against DuPont and Conoco.  Parsons
alleged that DuPont and Conoco were unjustly enriched by Greenberg and
Motsenbocker’s alleged fraud and breach of fiduciary duty to Parsons, and he sought
the imposition of a constructive trust over funds that “should have been
rightfully paid” to him had Greenberg and Motsenbocker filed a fraud-upon-the-court
cause of action.  DuPont and Conoco specially excepted, arguing that (1) unjust
enrichment is not an independent cause of action, and (2) Parsons did not
identify the funds that would be subject to a constructive trust.  The trial
court sustained the special exceptions and granted Parsons leave to file a
fifth amended petition to replead his claims against DuPont and Conoco.[11]

Parsons
filed his amended petition,[12] which included new
allegations that unjust enrichment is an independent cause of action; that
DuPont and Conoco were unjustly enriched by Greenberg and Motsenbocker’s
actions as well as the actions of “such other entity or person(s) that
[Parsons] may demonstrate at trial”; and identified the res of the
constructive trust as DuPont and Conoco’s insurance policy.  DuPont and Conoco
specially excepted again, arguing that Parsons’s new allegations still did not
state a cause of action against them.  After a hearing on the motion, the trial
court granted the special exceptions and dismissed Parsons’s causes of actions
against DuPont and Conoco.  The trial court’s order also stated that the claims
against DuPont and Conoco for unjust enrichment and constructive trust were not
ripe.

On
appeal, Parsons does not address the dismissal grounds that his claims against
DuPont and Conoco were not ripe.  Because he has not attacked ripeness, we
affirm the dismissal on that ground.  See Gross v. Carroll, 339 S.W.3d
718, 723 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (affirming dismissal of
plaintiff’s claims because he failed to challenge all grounds on which the
dismissal could have been based); Britton v. Texas Dep’t of Criminal Justice,
95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (affirming
granting of a plea to the jurisdiction because the plaintiff did not attack all
grounds supporting the grant).  We overrule Parsons’s tenth issue.

Conclusion

          Having
overruled all of Parsons’s issues on appeal, we affirm the judgment of the
trial court.

 

 

 

LEE GABRIEL
JUSTICE

 

PANEL: 
WALKER,
McCOY, and GABRIEL, JJ.

 

DELIVERED:  February 2, 2012









[1]See Tex. R. App. P. 47.4.





[2]Parsons argues that
Greenberg is also negligent under these theories, but because Parsons does not
appeal the jury’s finding that Greenberg was negligent, we do not address
Parsons’s arguments pertaining to Greenberg’s actions.





[3]This case includes a
reporter’s record spanning forty-one volumes and a clerk’s record of fifty-nine
volumes.





[4]If the evidence had shown
such an agreement, it would have disproven any finding of negligence against
Greenberg.





[5]Parsons also appears to
argue that the trial court erred by entering judgment for Greenberg and
Motsenbocker consistent with the jury’s findings because the trial court was
aware of information outside the record that, according to Parsons,
demonstrated negligence by the attorneys.  To the extent that Parsons argues
that the trial court should have considered information not in evidence, we
overrule that argument.  See Pool, 715 S.W.2d at 635 (noting that
the appellate court reviews a factual sufficiency challenge based on the
evidence in the record); see also K-Mart No. 4195 v. Judge, 515
S.W.2d 148, 155 (Tex. Civ. App.—Beaumont 1974, writ dism’d) (“[I]t would seem
most inappropriate for the court to consider evidence outside its own record
notwithstanding prior precedent supports such practice.”).





[6]Blue represented Greenberg
for the purposes of voir dire.  Blue, as the executrix of the estate of
Frederick M. Baron, and Baron & Budd, P.C. were also defendants in this
case.  The trial court granted summary judgment for them, which was upheld on
appeal.  See Parsons v. Baron, No. 02-09-00380-CV, 2011 WL
3546617, at *1 (Tex. App.—Fort Worth Aug. 11, 2011, no pet. hist.) (mem. op.).





[7]We further note that
Parsons appeared to understand what it means to “lay the foundation” for the
admission of evidence, as shown in this exchange during trial,

MR. PARSONS:  Okay.  Thank you.  Your
Honor, I offer Plaintiff’s Exhibit No. 31 as --

MR. ROSS:  Objection, lacks foundation.

THE COURT:  Mr. Parsons, would you like
to lay a foundation for this exhibit?

MR. PARSONS:  Yes, ma’am.  I thought I
had just done that in the trial.

. . . . 

MR. ROSS:   Your Honor, we’d like to withdraw
our objection.  I have no objection to this document coming in.

THE COURT:  Thank you, Mr. Ross. 
Hearing no objection to Plaintiff’s Exhibit No. 31, that exhibit is admitted
into evidence at this time.





[8]We also note that contrary
to his position on appeal, in the hearing on Parsons’s motion for leave of
court to amend his petition for the sixth time, Parsons argued that Greenberg
and Motsenbocker misinterpreted the August 11, 2008 order and stated that the order
“was limited to really saying that you could not recover punitive damages in a
legal malpractice case.”





[9]Parsons argues that the
trial court erroneously struck two paragraphs from one of his affidavits. 
Parsons’s first complaint, that the trial court erroneously struck a
description of hiring an investigator, is immaterial because it is not evidence
that the attorneys never intended to file the claim.  Parsons’s second
complaint, that the trial court erroneously struck an entire paragraph when
only some of it was speculative, is devoid of any citation to authority and
thus, inadequately briefed.  See Tex. R. App. P. 38.1(i); see also
Fredonia State Bank, 881 S.W.2d at 284–85.





[10]We further note that
neither the motion nor the order was found in the record before us.





[11]There is presumably a
fourth amended petition but it does not appear in the record before us.





[12]The fifth amended
petition also does not appear in the record except as an exhibit to DuPont and
Conoco’s special exceptions and motion to dismiss.